487 P.2d 818 (1971)
Mary SCHENFELD, Petitioner,
v.
James M. SHAFFER, as Director of The Colorado Department of Labor and Employment, et al., Respondents.
No. 70-606.
Colorado Court of Appeals, Div. II.
May 11, 1971.
Rehearing Denied June 2, 1971.
Certiorari Denied August 17, 1971.
*819 Philip Hornbein, Jr., Roy O. Goldin, Denver, for petitioner.
Harold Clark Thompson, Alious Rockett, Feay Burton Smith, Jr., Denver, for respondents Western Foundries, Inc., and The State Compensation Insurance Fund.
Duke W. Dunbar, Atty. Gen., John P. Moore, Deputy Atty. Gen., Peter L. Dye, Asst. Atty. Gen., Denver, for respondents James M. Shaffer, as Director of The Colo. Dept. of Labor and Employment, and The Colo. Industrial Comm.
Selected for Official Publication.
DUFFORD, Judge.
The appellant is the widow of Joseph Schenfeld, who was injured in the course of his employment with the appellee, Western Foundries, Inc., on February 1, 1966. After his injury, Mr. Schenfeld was paid compensation by the appellee State Compensation Insurance Fund for temporary total disability until October 1969, at which time Mr. Schenfeld was awarded compensation for permanent total disability. On November 24, 1969, Mr. Schenfeld was granted a lump-sum award of $11,332, and his disability payments were reduced accordingly. On December 4, 1969, before payment of the lump-sum award was made, Mr. Schenfeld died as a result of a heart failure unrelated to his accident. The lump-sum award has never been paid; however, other disability payments made to Mr. Schenfeld during his lifetime totalled $10,202.
Thereafter, the appellant, as the sole dependent of the decedent, applied for death benefits pursuant to the provisions of C.R. S.1963, 81-11-1 et seq. The Industrial Commission ultimately awarded appellant the sum of $5,635, but revoked the lump-sum disability award.

I.
In revoking the lump-sum disability award, the Commission took the position, *820 and reasserts it here, that the purposes for which the award was made were personal to Mr. Schenfeld and were frustrated by the fact of his death. Even if we assume that this was, and is, the case, the Commission was without authority to revoke that award.
No contention has ever been made that the award was not validly entered in the first instance, or that its propriety was contested by the State Compensation Insurance Fund at the time it was made or thereafter. Under such circumstances, the award became, at the time of entry, tantamount to a final judgment and a vested right which survived Mr. Schenfeld's death. McBride v. Industrial Commission, 97 Colo. 166, 49 P.2d 386.
Revocation of the award was an invalid act on the part of the Commission, and its order to such effect is reversed.

II.
Mr. Schenfeld's widow also urges in this appeal that the Commission erred in computing the amount of death benefits to which she is entitled.
The following sections of C.R.S.1963, Chapter 81, as they existed at the time of Mr. Schenfeld's compensable injury, are relevant to the determination of the questions his widow raises:
1965 Perm.Supp., 81-11-3: "Death benefits.In case of death the dependents of the deceased entitled thereto shall receive as compensation or death benefits sixty-six and two-thirds per cent of the deceased employee's average weekly wages, not to exceed a maximum of forty-nine dollars per week and not less than a minimum of eleven dollars and fifty cents per week for a period not to exceed six years from the date of the death of the injured employee, less any sums paid to the employee prior to his death as compensation for his disability as in this chapter provided. * * *"
81-11-11: "Death from injurybenefits. (1) (a) In case death proximately results from the injury, the benefits shall be in the amount and to the persons following:
* * *"
1965 Perm.Supp., 81-11-11(1) (c): "If there are wholly dependent persons at the time of death, the payment shall be sixty-six and two-thirds per cent of the average weekly wages, subject to the limitations of this chapter as to maximum and minimum weekly amounts, and to continue for a period of six years from the date of death of the injured employee and not to amount to more than a maximum of fifteen thousand three hundred thirty-seven dollars, less any sums paid to the injured employee prior to his death as compensation for disability as in this chapter provided; * * *"
81-11-12: "When death not proximate resultbenefits.(1) (a) If death occurs to an injured employee, other than as a proximate result of accident before disability indemnity ceased, and the deceased leaves a person or persons wholly dependent upon him for support, death benefits shall be as follows:
"(b) Where the accident proximately caused permanent total disability, the death benefit shall consist of the unpaid and unaccrued portion of the permanent total disability benefit which the employee would have received had he lived until he had received compensation at his regular rate for a period of six years.
* * *"
Looking solely to the provisions of C.R.S. 1963, 81-11-12(1) (b), and taking the fact that her husband was awarded a maximum permanent disability award of $49 per week on October 31, 1969, which was then reduced to a "regular rate" of $119.18 per month after entry of the lump-sum settlement award, the widow computes her death benefit on the following basis: First, she multiplies his "regular rate" of $119.18 per month by the six-year or 72-month period specified in C.R.S.1963, 81-11-12(1) (b), yielding a total of $8,580.96. Second, she subtracts from this only the *821 total of the weekly or monthly payments for permanent disability which were paid to her husband during his lifetime and which come to $392. The balance figure of $8,188.96 is what she claims as the amount of her death benefit award. In her computations no credits are allowed for the temporary disability benefits paid to her husband during his lifetime nor for the lump-sum award which, as we have ruled here, was a property right which became vested and accrued during Mr. Schenfeld's life. It is her position that the provisions of C.R.S.1963, 81-11-12(1) (b) compel computation of her death benefit on such basis.
However, such computation, without more, does clear violence to the provisions of 1965 Perm.Supp., C.R.S.1963, 81-11-3, which section sets the legislative maximums and minimums on death benefits, and which directs what deductions will be made against death benefits. Her computation, if valid, also confers, without logical reason, a larger death benefit award to a disabled employee who dies of causes unrelated to a work-connected injury than the benefit conferred by the provisions of 1965 Perm.Supp., C.R.S.1963, 81-11-11(1) (c), as to an employee whose death results from his work-connected, disabling injury. Such results contravene the mandate of statutory construction which we must follow requiring us to read together all portions of the Workmen's Compensation Act and to harmonize them if possible. McBride v. Industrial Commission, supra.
While it is true that a literal application of C.R.S.1963, 81-11-12(1) (b), yields a computed amount in the sum urged by the widow, such amount must be viewed as only a preliminary figure. It constitutes a figure which, in certain cases, is subject to further modification by virtue of the statutory maximum limitation and which is reducible by the mandatory credits imposed by 1965 Perm.Supp., C.R.S.1963, 81-11-3, if all such credits have not been previously deducted. Under the provisions of that section, the maximum death benefit which can be awarded is a sum computed at the rate of $49 per week for a period not to exceed six years, i. e., $15,337. From this amount the section directs that there shall be deducted any sums paid to the employee prior to his death as compensation for his disability under the provisions of the Workmen's Compensation Act.
Applying these statutory restrictions to the instant case where the claimant was paid total disability benefits during his lifetime in the amount of $10,202, and where, under the rule announced herein, he acquired a vested property right during his lifetime to the lump-sum disability award of $11,332, it is clear that upon discharge of the obligation to pay the lump-sum permanent disability award, the claimant will have received disability compensation sums under the Workmen's Compensation Act in the aggregate sum of $21,534. Such sum exceeds, by itself, the gross maximum base of $15,337 which is allowed under the provisions of 1965 Perm.Supp., C.R.S.1963, 81-11-3. Consequently no additional death benefit is payable to the widow. This is precisely the same result which would occur under the provisions of 1965 Perm.Supp., C.R.S.1963, 81-11-11(1) (c), relating to death benefit awards payable to the dependents of disabled employees whose deaths result from a work-connected injury.
The order of the Industrial Commission revoking payment of the lump-sum disability award in the amount of $11,332 is hereby reversed, as is that order of the Commission awarding a death benefit to the appellant in the amount of $5,635 (such award having been computed on the erroneous assumption that the lump-sum disability award was properly revoked). This cause is remanded to the Commission with the directions that it revoke its order awarding the death benefit in the amount of $5,635 and reinstate its order authorizing *822 the lump-sum permanent disability award in the amount of $11,332.
Order reversed, and cause remanded with directions.
SILVERSTEIN, C. J., and ENOCH, J., concur.