**Sylvia COOPER, personal representative of the Estate of Maxine Cooper, Petitioner,**

v.

**INDUSTRIAL CLAIM APPEALS OFFICE OF the STATE OF COLORADO and Safeway, Inc., Respondents.**

**No. 03CA2330.**

Colorado Court of Appeals.
Division V.

Feb. 24, 2005.

Law Offices of O'Toole & Sbarbaro, P.C., Neil D. O'Toole, Denver, Colorado, for Petitioner.

John W. Suthers, Attorney General, Eric S. Rothaus, Assistant Attorney General, Denver, Colorado, for Respondent Industrial Claim Appeals Office.

Thomas Pollart & Miller, LLC, Douglas A. Thomas, Greenwood Village, Colorado, for Respondent Safeway, Inc.

DAILEY, J.

In this workers' compensation proceeding, Sylvia Cooper, in her capacity as personal representative for the Estate of Maxine Cooper (Estate), seeks review of the final order of the Industrial Claim Appeals Office (Panel) denying permanent partial disability (PPD) benefits and granting the request of Safeway, Inc. (respondent) for reimbursement of an overpayment. We affirm in part and set aside in part.

Maxine Cooper (decedent) sustained an admitted industrial injury in March 2002. Respondent filed an uncontested final admission of liability on August 30, 2002, accepting liability for PPD benefits in the amount of $26,831.54. Respondent made a periodic PPD payment of $1,064.70 by check on September 4, 2002, and then made a lump sum payment of $9,981.05 by check on September 12, 2002.

Decedent died on September 14, 2002, of causes unrelated to her industrial injury. Shortly after decedent's death, the Estate negotiated both checks and requested an order requiring payment of the balance of the PPD award. At the hearing, the Estate conceded that decedent left no dependents as defined by the Workers' Compensation Act (Act).

The administrative law judge (ALJ) determined that the Act does not provide for the payment of PPD benefits to the legal representative of an injured worker's estate. Accordingly, the ALJ denied the Estate's claim for the remainder of the PPD award.

On review, the Panel upheld the ALJ's denial of the Estate's claim for the remaining PPD benefits. However, it further determined that the ALJ had erred in failing to order repayment of a portion of the previously paid PPD lump sum payment and modified the order to allow respondent to recover an overpayment of $9,675.85.

## I.

█ The Estate first contends that the ALJ erred in determining that it was not entitled to decedent's awarded medical impairment benefits. We disagree.

Because decedent's death did not occur as a result of the industrial injury, the Estate's claim is governed by § 8–42–116(1), C.R.S. 2004, which states in pertinent part:

> If death occurs to an injured employee, *other than as a proximate result of any injury, before disability indemnity ceases and the deceased leaves persons wholly dependent upon the deceased for support,* death benefits shall be as follows:
>
> . . . .
>
> (b) Where the injury proximately caused permanent partial disability, the death benefit shall consist of the unpaid and unaccrued portion of the permanent partial disability benefit which the employee would have received had he lived.

(Emphasis added.)

█ The purpose of § 8–42–116(1) is to provide dependents of deceased workers with a substitute for the support previously provided by the decedent through the receipt of disability benefits. However, under the "rule of independence," disability payments awarded to an injured worker are entirely independent from death benefits awarded to the employee's dependents. *Metro Glass & Glazing, Inc. v. Orona,* 868 P.2d 1178, 1180 (Colo.App.1994). Further, the survival statute, which allows all causes of action to be brought notwithstanding the death of the person in favor of whom the action originally accrued, is inapplicable to claims filed under the Act. *Dick v. Indus. Comm'n,* 197 Colo. 71, 73, 589 P.2d 950, 951 (1979), *overruled in part on other grounds by Estate of Huey v. J.C. Trucking, Inc.,* 837 P.2d 1218, 1220 (Colo.1992).

Thus, we agree with the Panel's conclusion that decedent's entitlement to PPD benefits does not entitle the Estate to death benefits, except as specifically provided by the Act.

The conditions specified in § 8–42–116(1) are phrased in the conjunctive. Therefore, pursuant to the plain language of § 8–42–116(1), when the industrial injury has not been the proximate cause of the death, an award of death benefits that is based on the amount of unpaid PPD benefits can be made only when there are dependents. *See Younger v. City & County of Denver,* 810 P.2d 647, 649 (Colo.1991)(phrases "arising out of" and "in the course of" are not synonymous, and the conjunctive condition requires the claimant to meet both requirements). Indeed, nondependent heirs are specifically precluded from recovering benefits even when the injured employee's death results from the industrial accident. *See* § 8–42–123, C.R.S.2004 (compensation for death resulting from industrial injury is limited to a lump sum payment for burial expenses if there are no dependents); *Ryan v. Centennial Race Track, Inc.,* 196 Colo. 30, 34, 580 P.2d 794, 797 (1978)(legislature legitimately denied benefits to nondependent heirs).

Here, it is undisputed that neither the Estate nor the heirs it represents qualify as dependents. Accordingly, the ALJ and the Panel correctly determined that the Estate failed to prove a claim for unpaid PPD benefits. *See Magnetic Eng'g, Inc. v. Indus. Claim Appeals Office,* 5 P.3d 385, 389 (Colo.App.2000)(reviewing court should give deference to interpretation of statute by officer or agency charged with its administration).

In so holding, we reject the Estate's purported distinction between permanent disability benefits and permanent medical impairment benefits, and deduce no meaningful legislative intent to create a right of compensation based upon the statute's reference to permanent disability benefits without any accompanying mention of permanent medical impairment benefits. *See Ray v. Indus. Claim Appeals Office,* 920 P.2d 868, 870 (Colo.App.1996)(" 'medical impairment benefits' . . . are a form of permanent partial disability benefits designed to compensate for loss of earning capacity").

We are also unpersuaded by the Estate's policy argument that reading § 8–42–116(1) to defeat any claim by the injured worker's heirs to admitted impairment benefits results in an undeserved windfall to the employer and undercuts the Act's humanitarian pur-

pose of assisting injured workers and their families. The Act, which is based upon a mutual renunciation of common law rights and defenses by both employers and employees, has a two-pronged goal: to assure the quick and efficient delivery of benefits, and to deliver those benefits at a reasonable cost. Section 8–40–102(1), C.R.S.2004. Not only is our reading of § 8–42–116(1) consistent with the overall goals of the Act, but it is also consistent with the statute's specific purpose of providing a support substitute for those dependent upon the deceased worker.

## II.

■ We agree, however, with the Estate that the Panel erred in determining respondent was entitled to reimbursement from the Estate for the lump sum payment made to decedent before her death.

Generally, an uncontested final admission of liability automatically closes a case as to the issues addressed in that document. *Cibola Constr. v. Indus. Claim Appeals Office*, 971 P.2d 666, 667 (Colo.App.1998). But a case may be reopened to recover an overpayment of benefits. Section 8–43–303(1), C.R.S.2004; *Colo. Comp. Ins. Auth. v. Baker*, 955 P.2d 86, 89 (Colo.App.1998).

We assume, for purposes of our decision here, that the case was properly reopened as to the overpayment issue when respondent endorsed it in its response to Estate's application for hearing, reasserted it at the commencement of the hearing, and then, together with counsel for the Estate, engaged in argument about the specific basis for the alleged overpayment. *Cf. Lewis v. Scientific Supply Co.*, 897 P.2d 905, 907 (Colo.App.1995)(in the interest of judicial and administrative economy, reviewing court was authorized to treat motion to withdraw admission of liability as substantive equivalent of a petition to reopen claim).

Nonetheless, we conclude that respondent was not entitled to recover an overpayment.

The term "overpayment" is defined in § 8–40–201(15.5), C.R.S.2004, as follows:

> "Overpayment" means money received by a claimant that exceeds the amount that should have been paid, or which the claim-

ant was not entitled to receive, or which results in duplicate benefits because of offsets that reduce disability or death benefits payable under said articles. For an overpayment to result, it is not necessary that the overpayment exist at the time the claimant received disability or death benefits under said articles.

Here, respondent asserts that, as a result of decedent's death, a portion of the lump sum payment automatically became an "overpayment" because she no longer suffered a loss of future earning capacity. We are not persuaded.

■ Generally, an "overpayment" is anything that has been "paid" but is not "owing as a matter of law." *See Rocky Mountain Cardiology v. Indus. Claim Appeals Office*, 94 P.3d 1182, 1186 (Colo.App.2004)(because temporary disability was owing as a matter of law until ALJ granted prospective relief, the disputed payment did not constitute an overpayment).

Here, the lump sum payment to decedent was made pursuant to § 8–42–107(8)(d), C.R.S.2004, which provides, in pertinent part:

> Up to ten thousand dollars of the total amount of any such award [for medical impairment benefits] shall be automatically paid in a lump sum less the discount as calculated in section 8–43–406 upon the injured employee's written request to the employer or, if insured, to the employer's insurance carrier. The remaining periodic payments of any such award, after subtracting the total amount of the lump sum requested by the employee ... shall be paid at the temporary total disability rate but not less than one hundred fifty dollars per week and not more than fifty percent of the state average weekly wage, beginning on the date of maximum medical improvement.

Thus, the lump sum payment here was not only authorized, it was required by statute. And, once paid, it "became a vested right." *McBride v. Indus. Comm'n*, 97 Colo. 166, 172, 49 P.2d 386, 389 (1935); *see Schenfeld v. Shaffer*, 29 Colo.App. 425, 427, 487 P.2d 818, 820 (1971)(at time of its entry, lump sum award became tantamount to final judgment

and a vested right which survived the decedent's death).

We recognize that, in both *McBride* and *Schenfeld,* the decedents had dependents, a fact which could have brought them under the provisions of § 8–42–116, discussed in part I of this opinion. However, those cases need not be read so narrowly. The provisions of § 8–42–116 encompass distribution of "unaccrued" benefits; both *McBride* and *Schenfeld,* however, discuss lump sum payments in terms of "vested" rights. Because the benefits are "vested," they are, for inheritability purposes, "accrued," and thus are not subject to recoupment, in whole or in part, by an employer or its insurer upon the subsequent death of the employee.

Our view is in accord with that of leading commentators and other courts. *See* 4 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 89.02, at 89–2 (2002)("Accrued but unpaid installments are, of course, an asset of the estate, like any other debt.... When the award takes the form of a lump sum, the amount due as accrued payments is the entire amount of the lump sum."); 2 Mark A. Rothstein et al., *Employment Law* § 7.29, at 289 (3d ed. 2004)("Unpaid benefits that accrued prior to [workers'] death are clearly included in their estates. The same rule applies to unpaid lump sums awarded before their death." [sic] ); *see also Denton v. U.S. Fid. & Guar. Co.,* 158 Ga.App. 849, 282 S.E.2d 350, 352–53 (1981); *Bailey v. Travelers Ins. Co.,* 383 S.W.2d 562, 564 (Tex.1964).

Our view is also in accord with the purpose of lump sum awards, that is, to provide the recipient with a greater degree of flexibility to meet his or her financial needs. This purpose is, however, undermined if the employer is subsequently permitted to seek reimbursement from the employee's estate of sums previously awarded.

Consequently, we hold that employers may not seek, based solely on an employee's death, to recoup as an "overpayment" that part of a lump sum payment that was calculated to compensate future costs and needs. However, our holding in no way forecloses an employer's right to recover, as "overpayments," portions of lump sums which are awarded on the basis of mathematical miscalculations or which are shown to be subject to specific statutory offsets. *See* § 8–42–113.5(1), C.R.S.2004 (overpayment recovery permitted when claimant also received "any payment, award, or entitlement to benefits under the federal ... disability insurance act, an employer-paid retirement benefit plan, or any other plan, program, or source for which the original disability benefits ... is required to be reduced ... but which were not reflected in the calculation of such disability benefits"); *Colo. Comp. Ins. Auth. v. Baker, supra,* 955 P.2d at 89 (generally discussing offsets to disability benefit payments).

That portion of the order allowing respondent to recover a portion of the lump sum payment is set aside; otherwise, the order is affirmed.

Judge WEBB and Judge HUME concur.